## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

**RONALD RAINEY, SR.**                                    **CASE NO. 2:22-CV-05289**

**VERSUS**                                                **JUDGE JAMES D. CAIN, JR.**

**PNK LAKE CHARLES, LLC ET AL.**                  **MAGISTRATE JUDGE LEBLANC**

### <u>MEMORANDUM RULING</u>

Before the Court is a "Joint Motion for Summary Judgment" filed by Defendants PNK Lake Charles, LLC ("PNK") and Kone Inc. ("Kone") to dismiss all claims against it pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.  Doc. 17.   The Plaintiff, Ronald Rainey, Sr. ("Rainey"), opposes the motion.  Doc. 22.

### BACKGROUND INFORMATION

This case concerns an injury allegedly sustained by Rainey in an elevator while he was visiting the L'Auberge Du Lac Casino Resort ("casino"), which is operated by PNK. Doc. 1-4 at ¶¶ 3-4.  On February 23, 2021, Rainey and his friend and co-worker, Warren Williams ("Williams") were staying at the casino while on a work assignment.  Doc. 17-1 at ¶ 2.  The two had already spent at least one night at the casino in a room located on the third floor.  *Id.* at ¶ 3; Doc. 22-2 at 158.  On the date of the incident, the two men woke up, got ready for work, and proceeded to an elevator on the third floor.  Doc. 22-2 at 155.  They entered an elevator on the third floor to head to the ground floor.  Doc. 17-1 at ¶ 4.  Rainey alleges that after the elevator began descending it "came to a sudden, violent stop without any prior notice or warning, causing [his] body to violently twist and jerk."  Doc. 1-4 at ¶

9.  As a result, Rainey claims that he sustained severe personal injuries to his back, knees, ankles, and feet. *Id.* at ¶ 11.  It is undisputed that Rainey and Williams were in the elevator for approximately eighteen minutes.  Doc. 17-1 at ¶ 10.

The parties present the Court with drastically different accounts of what transpired inside the elevator during those eighteen minutes.  Rainey provided deposition testimony that after he entered the elevator, he experienced violent drops and shaking. Doc. 22-2 at 158-159.  Rainey also testified that the movements caused him to feel immediate pain in his lower back, legs, and knees, which ultimately caused him to sit on the floor of the elevator.  *Id.* at 159, 164-165, 183, 235.  Rainey also provided an affidavit from Williams, who states that the elevator dropped several feet, causing his and Rainey's bodies to violently jerk and twist.  Doc. 22-3 at ¶ 4.  Williams states that the elevator bounced and jerked on at least four occasions.  *Id.* at ¶ 5.  Further, Williams states that the movements caused Rainey pain, leading him to sit on the floor.  *Id.* at ¶ 6.

Defendants submitted the authenticated video surveillance footage from inside the elevator. Doc. 17-7 at ¶ 9; Doc. 17-5.  Defendants assert that the footage contradicts Rainey's description of events and shows that there was no sudden or violent stop causing Rainey's body to twist or jerk.  Doc. 17-2 at 4.  Defendants maintain that the footage only shows Rainey and Williams stuck in the elevator for eighteen minutes before exiting without injury.  *Id.* at 4.

Rainey filed his original Petition for Damages on February 9, 2022, and a First Supplemental and Amended Petition for Damages on September 12, 2022, in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana.  Doc. 1-4; Doc. 1-1.

Rainey asserts claims pursuant to Louisiana Civil Code articles 2315, 2317, 2317.1, 2322, and 2320.  Doc. 1-4 at ¶¶ 13, 15, 17, 18.  Rainey seeks damages for: (1) past, present, and future physical pain and suffering; (2) past, present, and future mental and emotional anguish, pain, and suffering; (3) past and future medical expenses; and (4) past and future lost wages and earning capacity.  *Id.* at ¶ 12.  On September 22, 2022, PNK filed a notice of removal under diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Doc. 1.  Defendants deny any liability to Rainey for his alleged injuries.  Doc. 5; Doc. 9.

The Defendants move for summary judgment, arguing that all of Plaintiff's claims should be dismissed because there is an absence of factual support for at least one element for each of Plaintiff's claims. Doc. 17.  Specifically, Defendants contend that Plaintiff will be unable to show that the alleged incident occurred, or that it was the cause in fact of his injuries based on a review of the video surveillance footage.  Doc. 17-2 at 1.  Plaintiff opposes, arguing that Defendants have not provided sufficient summary judgment evidence to support dismissal.  Doc. 22 at 4.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The

non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

### A. Motion to Strike the affidavit of Laura Duplechain

At the outset, Plaintiff objects to the affidavit of Laura Duplechain ("Duplechain"), PNK's Director of Surveillance, which was filed in support of Defendants' motion for summary judgment. Doc. 22 at 1; Doc. 17-7.  Duplechain's affidavit includes statements indicating that she is the Director of Surveillance at the casino and is responsible for all CCTV surveillance systems on the property.  Doc. 17-7 at ¶¶ 1, 4.  As part of her position, she reviewed the video surveillance of Rainey and Williams and attests that the video is authentic, correct, and accurate.  *Id.* at ¶¶ 7-9, 14.   She also states in her affidavit that based

on her review of the video, "the incident did not occur in the same manner that Mr. Rainey describes" and the elevator "never suddenly violently stopped causing [Mr. Rainey's] body to violently twist and jerk." *Id.* at ¶¶ 12-13.   Plaintiff takes issue with the last two statements refuting his version of events, arguing that these statements are self-serving, conclusory, not based on personal knowledge, and are nothing more than a non-expert opinion regarding the ultimate facts at issue.  Doc. 22 at 2.   As such, Plaintiff moves to strike the affidavit. *Id.*

Defendants respond that the affidavit is proper summary judgment evidence, arguing that Duplechain, as the Director of Surveillance for the casino, is the most qualified individual to attest to the validity of the surveillance video. Doc. 27 at 2.   Moreover, Defendants state that the sole purpose of her affidavit is to authenticate the surveillance video based on her position, knowledge of procedures, experience, and personal knowledge as to how the video was collected. *Id.*  Duplechain's affidavit also includes a sworn statement that the video was unedited except for combining various camera feeds to track Rainey's movements throughout the premises. *Id.*  Defendants maintain that the video speaks for itself, and the fact that Duplechain recorded what she observed does not convert her affidavit into an expert opinion. *Id*.

The Court agrees with the Defendants and will deny Plaintiff's motion to strike Duplechain's affidavit.  She provided sufficient information to establish the authenticity of the video under Federal Rule of Evidence 901.  Moreover, she has personal knowledge of the video surveillance process, which is sufficient to satisfy the requirements of Federal Rule of Civil Procedure 56(c)(4).  The Court has not considered the statements contained

in paragraphs 12 and 13, which Plaintiff finds problematic, in reaching its decision.  The Court reviewed the video and has formed its own opinion as to what is depicted therein.

### B. Whether genuine issues of fact exist

Plaintiff has asserted claims for damage under Louisiana Civil Code articles 2315, 2317, 2317.1, 2320, and 2322. Doc. 1-4 at ¶¶ 13, 15, 17, 18.   Article 2315 provides the basis for general tort liability for an act causing damage to another.  Article 2317 provides general custodial liability for damage caused by things in one's custody.  Article 2317.1 specifically addresses liability for damage caused by ruin, vice or defect in things.  Article 2322 provides liability for damage caused by ruin of a building.  Article 2320 provides for the liability of employers for damages caused by an employee.  Common to all of Plaintiff's numerous claims is the requirement that an injury or damage actually occurred.

The Defendants contend that the incident, as described by Plaintiff, simply did not occur, and as such, Plaintiff cannot bear the burden of demonstrating that the elevator was the cause-in-fact of his injuries. Doc. 17-2 at 3.   Defendants argue that the video demonstrates that there was no sudden violent stop of the elevator causing Plaintiff to violently twist and jerk.  *Id.* at 4.  Rather, Defendants suggest that the video only shows the Plaintiff and Williams entering the elevator, getting stuck on the second floor, trying to figure out why it stopped, and remaining in the elevator for eighteen minutes before exiting without injury.  *Id.*  Defendants maintain that nothing unusual whatsoever happened to the Plaintiff's body while inside the elevator. *Id.* at 6. Lastly, Defendants note that when Plaintiff exited the elevator, he denied that he needed medical attention when asked by

PNK's Lead Security Officer.  *Id.* at 7.  For these reasons, Defendants maintain that without an incident to cause Plaintiff's injuries there can be no liability.  *Id.*

Plaintiff counters that Defendants are essentially asking the Court to discount the testimony of the only eyewitnesses to the incident, himself and Williams, because the video does not depict the elevator in a roller-coaster type of motion. Doc. 22 at 5.  Plaintiff also notes that because the video camera was inside of the elevator any movement of the elevator was masked and only still images are captured.  *Id.* at 3, 5.  Further, Plaintiff argues that due to the angle of the wall-mounted camera the video does not capture what his body experienced at the time of the initial drop.  *Id.* at 6.  As such, Plaintiff maintains that the video cannot be dispositive on the occurrence or scope of the incident.  *Id.*

Although a court must review evidence in the light most favorable to the nonmoving party, when video evidence is available a court is not bound to accept the nonmovant's version of facts if contradicted by the video.  *Crane v. City of Arlington, Tex.*, 2022 WL 4592035, at *4 (5th Cir. Sept. 30, 2022) (citing *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014)).  However, "a court should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account." *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 730 (5th Cir. 2018).

Upon careful review of the video, the Court finds that Plaintiff's version of events is clearly contradicted by the surveillance footage.  The video shows that the elevator came to a stop on the second floor, which is indicated by the number "2" shown on the elevator control panel. Doc. 17-5, 7110-Hotel-2Elevator at 20:49:58.  The stop occurred with some degree of mild force, which is detectable when Williams takes a slight step forward with

his left foot.  *Id.*  The video also shows vibration on three other occasions. *Id.* at 20:53:07, 20:57:45, 21:05:23.   Otherwise, the elevator appears to be at rest during the eighteen minutes it was inoperable.

The video does not show that the elevator came to a "sudden and violent stop" as described by the Plaintiff.  Nor does the video depict the Plaintiff "violently twisting and jerking."   While the Plaintiff is standing directly below the wall-mounted camera so that he is just outside of the camera's frame when the elevator came to a stop, this does not automatically preclude summary judgment.  If the elevator had stopped so abruptly that it caused the Plaintiff to "violently twist and jerk" common sense dictates that his body would have moved into the camera's frame.  Moreover, by observing Williams, who is seen during the entire video, it is clear the elevator did not subject its passengers to a force remotely strong enough to cause damage or injury.   The Court finds that no reasonable jury, when given the opportunity to review the video, could possibly believe Plaintiff's version of events as described during his deposition.  As such, summary judgment is appropriate.

## CONCLUSION

For the reasons stated above, the Joint Motion for Summary Judgment filed by Defendants PNK (Lake Charles), LLC and Kone, Inc. (Doc. 17) will be **GRANTED**. Plaintiff's Motion to Strike the affidavit of Laura Duplechain (Doc. 22) will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 8th day of February, 2024.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**